1255

B. E. "Speedy" LEWIS, Plaintiff v. CITY OF NORTH MYRTLE BEACH, Santee Cooper Electric Cooperative, jointly and severally, Defendants. B. E. "Speedy" LEWIS, Plaintiff v. CITY OF NORTH MYRTLE BEACH, A. William Moss, William A. "Dub" Huggins, Paul Blust, Santee Cooper Electric Cooperative, jointly and severally, Defendants. B. E. "Speedy" LEWIS, Petitioner v. CITY OF NORTH MYRTLE BEACH, South Carolina; and Darrell Gunn, Chairman, Gerald Smith, Dan Thompson, David Mackintosh, Wayne James and the members of the Building Board of Adjustments and Appeals for the City of North Myrtle Beach, South Carolina, Respondents. of whom City of North Myrtle Beach, A. William Moss, William A. "Dub" Huggins, Paul Blust, Darrell Gunn, Chairman, Gerald Smith, Dan Thompson, David Mackintosh, and Wayne James as members of the Building Board of Adjustments and Appeals for the City of North Myrtle Beach, South Carolina are Appellants/Respondents, and B. E. "Speedy" Lewis is Respondent/Appellant.

(375 S. E. (2d) 327)

Court of Appeals

---

*L. Sidney Connor, IV,* of *Nelson, Mullins, Riley & Scarborough,* Myrtle Beach, *for appellants/respondents.*

*Peter J. Coleman,* North Myrtle Beach, *for respondent/appellant.*

Heard Oct. 10, 1988.

Decided Nov. 28, 1988.

GARDNER, Judge:

The appealed order of this case, among other things, enjoined the City of North Myrtle Beach (the City) from enforcing its ten (10) foot side yard setback ordinance against B. E. "Speedy" Lewis (Lewis) as the ordinance relates to Lewis's property known as 701 13th Avenue South, North Myrtle Beach, South Carolina. We reverse and remand.

FACTS

Lewis sold an ocean-front lot on which was located a two-story house. The property developer gave Lewis the house. Lewis purchased the subject property with the express purpose of moving the two-story house there.

On October 22, 1984, Lewis applied for a permit to move the house. Along with his application, Lewis submitted a plot plan, as required by the City, which showed where on the lot the house would be located. The plot plan was prepared by Atlantic Land Surveying Company, Inc. The record reflects that Atlantic Land Surveying Company, Inc., had prepared many such plans for other people and his plans had been previously accepted by the City. The plans submitted with Lewis's application did not include any showing of the eaves of the house. Instead the plans showed that the house would conform to the City's side yard setback requirements of 10 feet, with one foot to spare. Had the plan included the eaves of the house, it would not have conformed to the City's side-yard setback requirements.

On October 22, 1984, the City issued a moving permit to Lewis. On November 6, 1984, Lewis applied for a building permit in order to dig and install a foundation for the house and to do other work on the house. The City officials relied on the previous plot plan submitted by Lewis and granted the building permit.

Subsequently, it was determined, after the building was placed on the lot, that because of the eaves of the house the ten-foot side setback zoning ordinance was violated. Lewis petitioned the North Myrtle Beach Zoning Board of Appeals for a variance, which was denied.

Lewis was granted temporary permission for electric utility service subject to the alleged agreement that Lewis would cut the eaves off the house to conform with the zoning setback ordinance. Lewis did not cut the eaves off and the City revoked the permission. Lewis appealed again to the Zoning Board of Appeals to obtain a conditional certificate of occupancy; this appeal was denied. Each time the Zoning Board of Appeals notified Lewis or his attorney that he had thirty days within which to appeal to the circuit court.

Thereafter Lewis appealed to the Building Board of Adjustments and Appeals seeking a certificate of occupancy.

The Board of Adjustments and Appeals summarily dismissed this appeal on the grounds that the Board had no authority to grant a variance to the City's zoning laws. It was after this appeal that the present action was instituted against the City and certain of its officers, agents and employees and Santee Cooper Electric Cooperative.

The first cause of action of Lewis's complaint alleges the basic facts set forth above and further that an ordinance known as Section 23-96 of the Code of North Myrtle Beach required the City to issue a "certificate of zoning compliance" before the initial moving permit was issued and before a second permit (repair-renovation) would be issued. Lewis alleged that the City did not comply with this ordinance. Lewis further alleged that the City is charged with enforcing Section 23-96 and that the purpose of the ordinance is, among other things, to protect people such as Lewis. Lewis alleges that the City's failure to comply with Section 23-96 and the consequent damages suffered by him constitute a denial of his rights to substantive due process of law and "flies in the face of equity." Lewis further alleges that he reasonably relied upon the expertise of the City personnel and their knowledge of applicable statutes and ordinances including Section 23-96, and as a result of said reliance he bought the subject lot and moved the house to it. Lewis alleges that because of the City's wilful violation of the ordinance requiring a certificate of zoning compliance prior to the issuance of a moving permit or building permit, the City should be estopped from any attempt to enforce a setback ordinance as it may apply to the subject structure and lot.

Lewis's complaint also alleges (1) a second cause of action in negligence based upon the City's failure to enforce the provisions of Section 23-96 and the resulting injury he suffered, (2) a third cause of action for intentional tort, (3) a fourth cause of action seeking a writ of mandamus requiring the chief building inspector to issue an unconditional certificate of occupancy to Lewis and (4) two causes of action for violation of Lewis's civil rights.

The appealed order made extensive findings of fact which include (1) that the plot plan attached to Lewis's application was prepared by a reputable, licensed surveyor who had

extensive prior dealings with the City and city personnel in the preparation and submission of similar plans for similar purposes, (2) that the Lewis plot plan depicted nothing more, or anything less, than similar plot plans prepared by the same surveyor for the same purposes, (3) that the City was in a better position than Lewis to review, study and analyze the information submitted on Lewis application, (4) that Lewis did not know *nor should he have known*, that the measurements as shown on the October 22, 1984, plot plan were not made to the roof overhang, (5) that the City made a mistake in assuming that the plan, as submitted, showed measurements from the side lot lines to the nearest projection from the structure, (6) that Lewis reasonably relied upon the reputation of the surveyor and the surveyor's prior dealing with the City in the preparation of such plot plan, (7) that the character of the surrounding neighborhood would not be adversely affected by allowing the eaves on Lewis's house to remain and (8) that had Lewis known that the eaves would overhang into the side yard setback space once located on the subject property, he would not have spent a substantial amount of money in the acquisition of the subject lot, the relocation and renovation of the house.

Based on the above findings of fact, the appealed order held and ordered that the City be estopped from enforcing the ten foot side yard setback ordinance.

## ISSUE

The dispositive issue on appeal is whether the preponderance of the evidence of record supports the proposition that Lewis neither knew nor had means of knowing that his house when moved to his 60 foot lot would violate the side setback zoning laws of the City.

## DISCUSSION

Lewis admitted he knew the City's zoning and setback requirements. The record clearly reflects that Lewis's surveyor was employed by Lewis and was his agent in the transaction and that he had the means of measuring the house, including the eaves, and determining that, when the house was placed on the 60-foot lot, the zoning ordinances of

North Myrtle Beach would be violated. The contra findings of fact by the trial judge were clearly erroneous and we so hold.

The essential elements of equitable estoppel are (1) ■ lack, on the part of the one claiming estoppel, of the knowledge and means of knowledge of the truth as to the facts and circumstances upon which his claim of estoppel is predicated; (2) conduct, representations or silence of the party estopped, amounting to misrepresentation or concealment of facts; (3) reliance upon such conduct, representations or silence; and (4) resulting action, to his detriment, by the party claiming the estoppel. *In re Nettles' Estate*, 231 S. C. 214, 97 S. E. (2d) 897 (1957). The Supreme Court as late as 1985 reasserted the principle that in order to successfully assert the doctrine of equitable estoppel, one must show that he was without knowledge or means of knowledge of facts upon which his claim of estoppel is predicated. *See Gibson v. Belcher*, 287 S. C. 315, 338 S. E. (2d) 330 (1985).

As noted above, the record before us clearly reflects that Lewis had the means of determining that when the two-story house he moved from the ocean-front lot was placed on the subject property that the side setback zoning ordinance would be violated. For this reason, we are compelled to reverse and remand the appealed order.

Finally, we note that Section 23-96 of the City's ordinances, contra to Lewis's argument, requires Lewis, himself, to apply for a certificate of compliance. Lewis does not contend that he applied for the certificate. We, therefore, reject the appealed order's holding that the City was equitably estopped to enforce the zoning laws because the City had failed to issue a certificate of zoning compliance pursuant to Section 23-96 of the City's ordinances; this holding is manifestly erroneous and we so hold.

## LEWIS'S APPEAL

Lewis filed a number of exceptions relating to the trial judge's failure to award him damages and attorney fees. Since we reverse and remand for the reasons above stated, we hold that Lewis's exceptions and the questions he presents on appeal are without merit.

## CONCLUSION

For the above reasons,[1] the appealed order is reversed and the case is remanded for purposes of entering judgment in accordance with this decision.

Reversed and remanded.

SANDERS, C. J., and GOOLSBY, J., concur.

---

[1] The appealed order held that equitable estoppel may lie against a municipality in the exercise of its police power. The City took no exception to this holding; we therefore do not address it.