622 S.E.2d 733

**EAGLE CONTAINER CO., LLC and Jeffrey D. Spotts, as Personal Representative of the Estate of Alfred D. Spotts, Respondents,**

v.

**COUNTY OF NEWBERRY, a political subdivision, and Susie Berry, in her capacity as Zoning Administrator of Newberry County, Appellants.**

No. 4037.

Court of Appeals of South Carolina.

Heard Oct. 12, 2005.

Decided Oct. 31, 2005.

Rehearing Denied Dec. 15, 2005.

614

616

Hardwick Stuart, Jr., of Columbia, for Appellants.

Thomas H. Pope, III, of Newberry, for Respondents.

B. Michael Brackett, of Columbia, for Amicus Curiae Citizens for Responsive Government, Inc.

ANDERSON, J.:

Newberry County appeals the trial court's order granting Eagle Container's summary judgment motion to reinstate Eagle Container's landfill permit based on the interpretation of an amending ordinance. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On December 5, 2001, the County of Newberry adopted the Newberry County Zoning Ordinance No. 12–24–01 ("Zoning Ordinance"). The Zoning Ordinance requires a zoning permit before any building, sign, or structure is erected, constructed, reconstructed, or structurally altered. The Zoning Administrator issues permits provided they are for uses "in conformity with the provision of [the Zoning Ordinance] or for a use authorized by order of the Board of Zoning Appeals."

Article 3 of the Zoning Ordinance establishes zoning districts and lists the general purposes for each zoning district. Section 301 provides R–2 Rural Districts "require large parcels for uses, allow rural and residential uses, including manufactured homes on individual lots, agricultural and related uses, ranching, recreation and hunting, a variety of governmental service uses, and limited business uses."

Article 5 sets forth the zoning district regulations. Section 500 classifies three types of uses for the zoning districts as follows:

1. *Permitted Uses:* Permitted uses listed in the District Use Tables in this division are permitted outright.

2. *Conditional Uses:* Conditional uses in the District Use Tables are permitted by the Zoning Administrator without further review upon compliance with the conditions specified in the tables.

3. *Special Exceptions:* Special exceptions are permitted after review and approval by the Board of Zoning Appeals upon compliance with the general conditions in the regulations . . . .

Prior to December 11, 2002, the Zoning Ordinance listed construction and demolition landfills ("C & D landfills") under "special exception" uses in R–2 Rural Districts. Pursuant to section 501, a C & D landfill would be permitted as a "special exception" in R–2 Rural Districts:

[P]rovided the Board of Zoning Appeals determines:

(1) Approvals shall be conditioned on the applicant receiving all state and federal approvals;

(2) All uses are a minimum of 1,000 feet from adjoining property lines;

(3) The use would not constitute a safety hazard or traffic hazard;

(4) The use is not detrimental to adjacent land uses in the vicinity.

On November 6, 2002, the first reading of Ordinance No. 12–49–02 ("amending ordinance") occurred. The minutes of Newberry County Council for November 6, 2002, provide:

Mr. Waldrop asked Ms. Bridges to explain [Ordinance No. 12–49–02].

Susan Bridges, Planning/Zoning Director, stated that on page 31 of the Zoning Ordinance, which is the list of Special Exception Uses in R–2, you will see landfill is listed as a permitted use under the Special Exceptions; however, when you look in Article 3, 301, you will see it is not listed there at all under the R–2 Rural Districts. This has been a source of confusion for some applicants who were interested in finding out what was permitted in R–2 and where in particular landfills were permitted. We thought it might need to be added as a clarification only. It is not adding to the use to the district; the district already has that use as a Special Exception.

On November 20, 2002, the second reading of the amending ordinance occurred. The Council minutes provide then-acting Zoning Director, Susan Bridges, was asked to "tell Council in layman's language exactly what doing [sic] [with the amending ordinance]." The Council minutes read:

Susan Bridges, Planning/Zoning Director, pointed out Article 3, Section 301, District Purpose. There is a list of designing districts all established by the Ordinance and after them is basically a statement of purpose and a list of some of the major uses that are permitted in each of those districts. The R–2 Rural District actually does allow landfills. If you will look in the list of permitted uses in R–2 Rural District, it is listed as a special exception use that requires Board of Zoning Appeals hearing. The approval for landfills shall be conditioned on the applicant receiving all state and federal approvals, all uses are a minimum of 1,000 feet from adjoining property lines, the use would not constitute a safety hazard or traffic hazard, and the use is not detrimental to adjacent land uses in the vicinity. The

Board of Zoning Appeals would have to hold a public hearing and find for all four of those factors before they could grant permission for a permit to be issued to an applicant.

On December 11, 2002, the Council adopted Ordinance No. 12–49–02 which provides:

WHEREAS, Ordinance No. 12–24–01 permits various uses in R–2 Rural Districts; and

WHEREAS, landfills should be allowed in the R–2 Rural District.

NOW, THEREFORE, BE IT ORDAINED AS FOLLOWS:

Article 3, Section 301 is amended to add text "landfill" to the uses permitted in R–2 Rural District. The text is added to the Newberry County Zoning Ordinance . . . ."

On June 2, 2003, Eagle Container Co., LLC applied for a permit from the County of Newberry to build a C & D landfill on property in an R–2 Rural District of Newberry County. Susan Berry, then-acting Newberry County Zoning Administrator, initially approved Eagle Container's application. On June 4, 2003, Newberry County revoked Eagle Container's permit "on the ground that it was erroneously issued."

Eagle Container commenced a declaratory judgment action on June 17, 2003, seeking an order rescinding the revocation of their landfill permit and reinstating their permit as originally approved. Additionally, Eagle Container petitioned for a writ of mandamus to compel issuance of a permit for the subject site. Eagle Container and Newberry County filed cross motions for summary judgment. The trial court found Eagle Container was entitled to judgment as a matter of law and denied Newberry County's subsequent motion to reconsider.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c) SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Pittman v. Grand Strand Entm't, Inc.,* 363 S.C. 531,

611 S.E.2d 922 (2005); *B & B Liquors, Inc. v. O'Neil,* 361 S.C. 267, 603 S.E.2d 629 (Ct.App.2004). In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Medical Univ. of South Carolina v. Arnaud,* 360 S.C. 615, 602 S.E.2d 747 (2004); *Rife v. Hitachi Constr. Mach. Co., Ltd.,* 363 S.C. 209, 609 S.E.2d 565 (Ct.App.2005). If triable issues exist, those issues must go to the jury. *Mulherin–Howell v. Cobb,* 362 S.C. 588, 608 S.E.2d 587 (Ct.App.2005).

█ Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Helms Realty, Inc. v. Gibson–Wall Co.,* 363 S.C. 334, 611 S.E.2d 485 (2005); *BPS, Inc. v. Worthy,* 362 S.C. 319, 608 S.E.2d 155 (Ct.App.2005). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Willis v. Wu,* 362 S.C. 146, 607 S.E.2d 63 (2004); *see also Schmidt v. Courtney,* 357 S.C. 310, 592 S.E.2d 326 (Ct.App.2003) (stating that all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Gadson v. Hembree,* 364 S.C. 316, 613 S.E.2d 533 (2005); *Montgomery v. CSX Transp., Inc.,* 362 S.C. 529, 608 S.E.2d 440 (Ct.App.2004). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Nelson v. Charleston County Parks & Recreation Comm'n,* 362 S.C. 1, 605 S.E.2d 744 (Ct.App.2004). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Ellis v. Davidson,* 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004). The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *McCall v. State Farm Mut. Auto. Ins. Co.,*

359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank v. Schmauch,* 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003). The nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Rife,* 363 S.C. at 214, 609 S.E.2d at 568.

The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder. *Dawkins v. Fields,* 354 S.C. 58, 580 S.E.2d 433 (Ct.App.2003); *Rumpf v. Massachusetts Mut. Life Ins. Co.,* 357 S.C. 386, 593 S.E.2d 183 (Ct.App.2004). Because it is a drastic remedy, summary judgment should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.,* 357 S.C. 631, 594 S.E.2d 455 (2004); *Hawkins v. City of Greenville,* 358 S.C. 280, 594 S.E.2d 557 (Ct.App.2004).

## *LAW/ANALYSIS*

### I. Interpretation of Legislative Intent

#### A. Plain Meaning Rule

Newberry County contends the trial court erred in using the "plain meaning" rule to conclude that Eagle Container is entitled to summary judgment. Newberry County asserts the "plain meaning" rule requires reading the amending ordinance as merely amending Article 3, section 301 to add "to the general statement of intent set forth in Article 3 to be used in the general interpretation and application of the Zoning Ordinance." We disagree.

■ "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Garvin v. State,* 365 S.C. 16, 21, 615 S.E.2d 451, 453 (2005); *Georgia–Carolina Bail Bonds, Inc. v. County of Aiken,* 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct.App.2003); *Knotts v. S.C. Dept. of Natural Resources,* 348 S.C. 1, 10, 558 S.E.2d 511, 516 (2002). "The primary purpose in construing a statute is to ascertain

legislative intent." *Gordon v. Phillips Utils., Inc.*, 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005).

" 'What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will.' " *Knotts,* 348 S.C. at 10, 558 S.E.2d at 516 (quoting Norman J. Singer, *Sutherland Statutory Construction,* § 46.03 at 94 (5th Ed.1992)); *Bayle v. South Carolina Dep't of Transp.*, 344 S.C. 115, 122, 542 S.E.2d 736, 740 (Ct.App.2001). "The legislature's intent should be ascertained primarily from the plain language of the statute." *State v. Landis*, 362 S.C. 97, 102, 606 S.E.2d 503, 505 (Ct.App.2004); *State v. Morgan*, 352 S.C. 359, 366, 574 S.E.2d 203, 206 (Ct.App.2002); *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 338, 478 S.E.2d 74, 76 (Ct.App.1996).

"The first question of statutory interpretation is whether the statute's meaning is clear on its face." *Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) (citing *Kennedy v. South Carolina Ret. Sys.*, 345 S.C. 339, 549 S.E.2d 243 (2001)). "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the Court has no right to impose another meaning." *Vaughn v. Bernhardt*, 345 S.C. 196, 198, 547 S.E.2d 869, 870 (2001) (citing *Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578 (2000)). "[T]he words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation." *Municipal Ass'n of South Carolina v. AT&T Communications of S. States, Inc.*, 361 S.C. 576, 580, 606 S.E.2d 468, 470 (2004) (citing *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992)). "The terms must be construed in context and their meaning determined by looking at the other terms used in the statute." *Morgan*, 352 S.C. at 366, 574 S.E.2d at 206 (Ct.App.2002) (citing *Southern Mut. Church Ins. Co. v. South Carolina Windstorm Hail Underwriting Ass'n*, 306 S.C. 339, 412 S.E.2d 377 (1991)). "Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute." *Jones v. State Farm Mut. Auto. Ins. Co.*, 364 S.C. 222, 231, 612 S.E.2d 719, 724 (Ct.App. 2005) (citing *Hodges*, 341 S.C. 79, 533 S.E.2d 578; *Bayle*, 344 S.C. at 122, 542 S.E.2d at 739). "When the terms of a statute are clear, the court must apply those terms according to their

literal meaning." *Georgia–Carolina Bail Bonds,* 354 S.C. at 24, 579 S.E.2d at 337 (citing *Cooper v. Moore,* 351 S.C. 207, 212, 569 S.E.2d 330, 332 (2002); *Holley v. Mount Vernon Mills, Inc.,* 312 S.C. 320, 440 S.E.2d 373 (1994); *Carolina Alliance for Fair Employment v. S.C. Dep't of Labor, Licensing, Regulation,* 337 S.C. 476, 523 S.E.2d 795 (Ct.App.1999); *see also Parsons v. Georgetown Steel,* 318 S.C. 63, 65, 456 S.E.2d 366, 367 (1995) ("Where the terms of a relevant statute are clear, there is no room for construction.")).

■ We find the "plain meaning" rule is applicable in the instant action and we do not need to resort to the rules of statutory construction because the language of the amending ordinance demonstrates the Council intended to make landfills a permitted use in R–2 Rural Districts. The amending ordinance states that "landfills should be allowed in the R–2 Rural District" and the Zoning Ordinance should be "amended to add text 'landfill' to the uses *permitted* in R–2 Rural District." (emphasis added). The Council's use of the term "permitted" is significant. Section 201(86) of the Zoning Ordinance defines the term "permitted use" as "a use permitted outright by district regulations." In contrast, "special exception" uses require approval by the Zoning Board of Appeals. The terms "permitted use" and "special exception" are mutually exclusive. This Court must assume Council understood the distinction between "permitted" uses and "special exception" uses. "There is a presumption that the legislature has knowledge of previous legislation ... when later statutes are enacted concerning related subjects." *State v. McKnight,* 352 S.C. 635, 648, 576 S.E.2d 168, 174 (2003) (citing *State v. Corey D.,* 339 S.C. 107, 529 S.E.2d 20 (2000); *Berkebile v. Outen,* 311 S.C. 50, 426 S.E.2d 760 (1993)). Because the amending ordinance clearly and unambiguously states "landfill" is to be added to the uses "permitted" in an R–2 Rural District, we must interpret the amending ordinance's plain language as changing landfill to a "permitted use." Therefore, we find the trial court did not err in granting Eagle Container's summary judgment motion pursuant to the "plain meaning" rule.

## B. Considering the Statute as a Whole

Newberry County argues the court must interpret the amending ordinance as leaving landfills as "special exception"

uses in consideration of the general purpose of the Zoning Ordinance, the inclusion of landfills as "special exceptions" in section 501, and the requirement in section 400 that the most restrictive interpretation of the ordinance will apply when ordinances appear to be at variance. We disagree.

 "All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *McClanahan v. Richland County Council,* 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002); *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County,* 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998); *State v. Morgan,* 352 S.C. 359, 366, 574 S.E.2d 203, 206 (Ct.App.2002); *State v. Hudson,* 336 S.C. 237, 246, 519 S.E.2d 577, 581 (Ct.App.1999). "In ascertaining the intent of the legislature, a court should not focus on any single section or provision but should consider the language of the statute as a whole." *Mid–State Auto Auction v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). "In construing a statute, the court looks to the language as a whole in light of its manifest purpose." *Jones v. State Farm Mut. Auto. Ins. Co.,* 364 S.C. 222, 231, 612 S.E.2d 719, 724 (Ct.App.2005). "A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *Browning v. Hartvigsen,* 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992). "The real purpose and intent of the lawmakers will prevail over the literal import of the words." *Id.* "Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention." *Id.* (citing *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000); *Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994)). "A court should not consider a particular clause in a statute as being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law." *Id.* "The language must also be read in a sense which 'harmonizes with its subject matter and accords with its general purpose.'" *Municipal Ass'n of South Carolina v. AT&T Communications of S. States, Inc.,* 361 S.C. 576, 580, 606 S.E.2d 468, 470

(2004) (citing *Hitachi Data Sys. Corp.,* 309 S.C. at 178, 420 S.E.2d at 846).

### 1. General Purpose of Zoning Ordinance

Newberry County contends the court cannot read the amending ordinance to allow landfills as permitted uses because such a reading goes against the general purposes of the Zoning Ordinance. We disagree.

"The purposes of the zoning ordinance are to implement the land use element of the comprehensive plan set forth in S.C.Code § 6–29–710." Section 6–29–710 of the South Carolina Code (2004) provides in part: "Zoning ordinances must be for the general purposes of guiding development in accordance with existing and future needs and promoting public health, safety, morals, convenience, order, appearance, prosperity, and general welfare."

However, "[i]t is not the prerogative of the courts to pass upon the wisdom of County Council's decision." *Bear Enters. v. County of Greenville,* 319 S.C. 137, 140, 459 S.E.2d 883, 885 (Ct.App.1995) (citing *Lenardis v. City of Greenville,* 316 S.C. 471, 472, 450 S.E.2d 597, 598 (Ct.App.1994)). "If the propriety of the Council's decision is even 'fairly debatable,' we cannot inject our judgment into a review of their decision, but must leave that decision undisturbed." *Id.; see also Rushing v. City of Greenville,* 265 S.C. 285, 288, 217 S.E.2d 797, 799 (1975) ("The Court will not overturn the action of the City if the decision is fairly debatable because the City's action is presumed to have been a valid exercise of power and it is not the prerogative of the Court to pass upon the wisdom of the decision."). "Rezoning is a legislative matter, and the court has no power to zone property." *Id.* " '[T]he governing bodies of municipalities clothed with authority to determine residential and industrial districts are better qualified by their knowledge of the situation to act upon such matters than are the courts, and they will not be interfered with unless there is a plain violation of the constitutional rights of citizens.' " *Id.* (citing *Lenardis,* 316 S.C. at 472, 450 S.E.2d at 598. "It is incumbent upon [the challenger] to show by clear and convincing evidence the arbitrary and capricious nature of the ordinance." *Bear Enterprises,* 319 S.C. at 140, 459 S.E.2d at 886

(citing *Town of Scranton v. Willoughby,* 306 S.C. 421, 412
S.E.2d 424 (1991)).

In the present case, this Court must give effect to the
Council's intent unless we find the Council's action was arbi-
trary and capricious. The Council is in a better position to
make zoning decisions to "promote public health" and "protect
general welfare." Here, Newberry County makes no argument
and this court does not find that the ordinance is arbitrary and
capricious. Therefore, the trial court correctly found the
general purposes of the Zoning Ordinance do not preclude
interpreting the amending ordinance as changing landfills to
permitted uses.

### 2. Consideration of Section 501 and Section 400

Newberry County asserts that the court must give effect to
section 501 and section 400 when interpreting the legislative
intent from the amending ordinance. We disagree.

The court must interpret the amending ordinance in light of
other relevant sections contained in the Zoning Ordinance.
"Statutes must be read as a whole and sections which are part
of the same general statutory scheme must be construed
together and given effect, if it can be done by any reasonable
construction." *Liberty Mut. Ins. Co. v. South Carolina Sec-
ond Injury Fund,* 363 S.C. 612, 622, 611 S.E.2d 297, 302
(citing *Tillotson v. Keith Smith Builders,* 357 S.C. 554, 593
S.E.2d 621 (Ct.App.2004); *Higgins v. State,* 307 S.C. 446, 415
S.E.2d 799 (1992)).

In the instant case, section 501 lists "landfills" as a "special
exception" use. However, the amending ordinance directly
contradicts section 501's classification of landfills thereby re-
pealing the classification and obviating the need to consider
the existence of the "special use" requirements. Because the
amending ordinance repeals section 501's designation of land-
fills, section 501's does not need to be considered.

Similarly, the amending ordinance's direct repeal of section
501 renders section 400 obsolete. Section 400 provides that
when requirements in the Zoning Ordinance are at variance
with the requirements of any other ordinance "the most
restrictive, or that imposing the higher standards shall gov-
ern." Here, the applicable restriction of section 501 is re-

pealed by the amending ordinance leaving only one statute (section 301 as amended) to consider.

The trial court did not fail to consider either section 501 or section 400 when interpreting the amending ordinance.

### C. Interpret Amending Ordinance as Clarifying

Newberry County argues that the amending ordinance can and should be interpreted as merely clarifying the Zoning Ordinance to clearly indicate landfills are allowed in R–2 Rural Districts. We disagree.

"A subsequent statutory amendment may be interpreted as clarifying original legislative intent." *Stuckey v. State Budget and Control Board*, 339 S.C. 397, 401, 529 S.E.2d 706, 708 (citing *Cotty v. Yartzeff*, 309 S.C. 259, 422 S.E.2d 100 (1992)). However, "[i]t will be presumed that the Legislature in adopting an amendment to a statute intended to make some change in the existing law." *Vernon v. Harleysville Mut. Cas. Co.*, 244 S.C. 152, 155, 135 S.E.2d 841, 844 (1964) (citing *82 C.J.S. Statutes* § 384b(2), page 904). "The Court must presume the legislature did not intend a futile act, but rather intended its statutes to accomplish something." *Denene, Inc. v. City of Charleston*, 352 S.C. 208, 212, 574 S.E.2d 196, 198 (2002) (citing *TNS Mills, Inc. v. South Carolina Dep't of Revenue*, 331 S.C. 611, 503 S.E.2d 471 (1998)).

We find the amending ordinance cannot be read as merely clarifying the Zoning Ordinance. In *Stuckey*, the legislature's subsequent adoption of a specific time period was interpreted by the court as "evidence of legislative intent that 'directly' be given a time-related meaning." 339 S.C. at 401, 529 S.E.2d at 708. In *Stuckey*, the subsequent legislative act added to the original act by providing a time period. *Id.* Here, the amending ordinance cannot be interpreted as clarifying because there is nothing to clarify; prior to the amending ordinance landfills were clearly allowed in R–2 Rural Districts as special exception uses. To have any effect whatsoever, the amending ordinance must be read as permitting landfills in R–2 Rural Districts without first getting approval from the Board of Zoning. Newberry County's reading would not change the Zoning Ordinance at all, making the amending ordinance's enactment essentially futile. Therefore, the trial court prop-

erly held that the amending ordinance could not be interpreted as clarifying the Zoning Ordinance.

## II. Repeal by Implication

▬ Newberry County claims the trial court incorrectly held that the amending ordinance repealed by implication section 501. We disagree.

▬ "[R]epeal by implication is disfavored, and is found only when two statutes are incapable of any reasonable reconcilement." *Atlas Food Sys. v. Crane Nat'l Vendors,* 319 S.C. 556, 558, 462 S.E.2d 858, 859 (1995) (citing *Mims v. Alston,* 312 S.C. 311, 440 S.E.2d 357 (1994)). "The repeal of a statute by implication is not favored, and is to be resorted to only in the event of an irreconcilable conflict between the provisions of two statutes," and "[i]f the provisions of the two statutes can be construed so that both can stand, this Court will so construe them." *In the Interest of Shaw,* 274 S.C. 534, 539, 265 S.E.2d 522, 524 (1980) (citing *City of Spartanburg v. Blalock,* 223 S.C. 252, 75 S.E.2d 361 (1953)). "It is well settled that repeal by implication is not favored and will not be applied if there is any way to reasonably reconcile the statutes." *PalmettoNet, Inc. v. South Carolina Tax Comm'n,* 318 S.C. 102, 108, 456 S.E.2d 385, 389 (1995). "As a general rule, a statute of a specific nature is not to be considered as repealed in whole or in part by a later general statute, unless there is a direct reference to the former or the intent of the legislature to repeal is explicitly implied therein." *Spartanburg County Dep't of Soc. Servs. v. Little,* 309 S.C. 122, 125, 420 S.E.2d 499, 501 (1992) (citing *City of Rock Hill v. South Carolina Dep't of Health and Envtl. Control,* 302 S.C. 161, 394 S.E.2d 327 (1990)).

Here, we find that section 501 was not repealed by implication but rather directly repealed. The intent to repeal section 501 is implied from the language of the amending ordinance. While the amending ordinance did not directly reference section 501, adding "landfill" to the uses "permitted" sufficiently conveys the legislative intent to repeal the section. Hence, the trial court correctly held that the amending ordinance repealed section 501.

### III. Last Legislative Expression Rule

 Newberry County alleges the trial court incorrectly applied the last legislative expression rule. We disagree.

If the amending ordinance is deemed ambiguous, the rules of statutory construction are employed to determine legislative intent. When a statute is ambiguous, the Court considers the terms of the statute and employs the rules of statutory interpretation. *Wade v. Berkeley County,* 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) (citing *Lester v. South Carolina Workers' Comp. Comm'n,* 334 S.C. 557, 514 S.E.2d 751 (1999)).

 "Under the 'last legislative expression' rule, where conflicting provisions exist, the last in point of time or order of arrangement, prevails." *Ramsey v. County of McCormick,* 306 S.C. 393, 397, 412 S.E.2d 408, 410 (1991). "In accordance with the principle that the last expression of the legislative will is the law, where conflicting provisions are found in the same statute, or in different statutes, the last in point of time or order of arrangement prevails." *Feldman v. S.C. Tax Comm'n,* 203 S.C. 49, 51, 26 S.E.2d 22, 24 (1943). "[L]ater legislation supersedes earlier laws addressing the identical issue." *Whiteside v. Cherokee Sch. Dist. No. One,* 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993). Further, "where there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect." *Id.* (citing *Wilder v. South Carolina Hwy. Dep't,* 228 S.C. 448, 90 S.E.2d 635 (1955)); *see also Ramsey,* 306 S.C. at 397, 412 S.E.2d at 410.

We find that employing the last legislative expression rule still leads to the conclusion that the Council intended the amending ordinance to change landfills to permitted uses in R–2 Rural Districts. Here, the amending ordinance was not only most recently enacted but specifically added "landfill" to the "uses permitted" in R–2 Rural Districts. Accordingly, the amending ordinance should be given full effect.

 Admittedly, "[the last legislative expression rule] is purely an arbitrary rule of construction and is to be resorted to only when there is clearly an irreconcilable conflict, and all

other means of interpretation have been exhausted." *Feldman,* 203 S.C. at 54, 26 S.E.2d at 24. However, "the Last Legislative Expression Rule requires that in instances where it is not possible to harmonize two sections of a statute, the later legislation supersedes the earlier enactment." *Williams v. Town of Hilton Head Island,* 311 S.C. 417, 421, 429 S.E.2d 802, 804 (1993). Here, assuming the amending ordinance is ambiguous, we find it is not possible to harmonize section 301 as amended with section 501. A use cannot be simultaneously categorized "permitted" and "special exception". The trial court properly applied the last legislative expression rule because an irreconcilable conflict would otherwise exist between these two sections.

## IV. Consideration of Legislative History

Newberry County argues the trial court erred in failing to consider the minutes of the Council as evidence of intent. We disagree.

"If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself." *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 339, 478 S.E.2d 74, 76 (1996). "[L]egislative history only can be resorted to for the purpose of solving doubt, not for the purpose of creating it." *Timmons v. South Carolina Tricentennial Comm'n,* 254 S.C. 378, 402, 175 S.E.2d 805, 817 (1970). "Legislative enactments are to be construed as they are written, and, unless there is an ambiguity in the legislation, resort to statements by members of a committee will not be considered in construing a particular piece of legislation." *Id.* "[I]n some instances extrinsic evidence of facts or information (such as legislative history for example) may be necessary and highly probative of the rationality of the legislature's determination." *State v. Byrd,* 267 S.C. 87, 92, 226 S.E.2d 244, 247 (1976). "But in each case, the court, exercising its sound discretion, must assure itself that the evidence sought to be introduced is necessary for a fair evaluation of the legislative declaration." *Id.*

We find that legislative history does not need to be considered in this case because the amending ordinance is not ambiguous.

If the amending ordinance were ambiguous, we find the trial court did not err in determining that the Council minutes were unhelpful. We have several concerns with the Council minutes. First, the minutes reflect that Susan Bridges (Bridges), the then-acting Zoning Director, gave a confusing explanation of the existing Zoning Ordinance. Bridges said a landfill is "listed as a permitted use under the Special Exceptions," and "look to list of permitted uses ... [landfill] is listed as special exception use." However, a "permitted use" cannot be a "special exception" use. Second, the minutes are merely unofficial summaries of comments by a county staff person as noted by the Council secretary. We assume these notes are accurate reflections of the Council meetings. *See Berkeley Elec. Coop. v. Mount Pleasant,* 308 S.C. 205, 208, 417 S.E.2d 579, 581 (1992) (stating Council minutes that are "properly authenticated or verified are the only competent evidence of the proceedings ...."). Still, properly authenticated minutes that communicate the events of a council meeting do not necessarily convey the intent of the legislature. Here, the court's reliance on confusing statements from the former zoning director would be ill-founded. We find the minutes are not indicative of any "legislative" intent behind the amending ordinance; the trial court did not err in refusing to give weight to these Council minutes.

## V. Subject Matter Jurisdiction

The amicus curiae brief raised new issues before this Court. The amicus curiae brief argues the trial court lacked subject matter jurisdiction on the basis of ripeness and because the trial court improperly exercised original jurisdiction. We disagree.

### A. Appealability

Initially, we must determine whether the issues raised by the amicus curiae brief are properly before this Court.

▇▇▇▇▇ Generally, amicus curiae cannot inject new issues into a case; however, courts will consider issues presented by

an amicus curiae when the court could raise the issue *sua sponte.* *See* 4 Am.Jur.2d *Amicus Curiae* § 7. "In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge." *State v. Dunbar,* 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003). "Issues not raised and ruled upon in the trial court will not be considered on appeal." *Id.* " 'Lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised *sua sponte* by the court.' " *All Saints Parish v. Protestant Episcopal Church,* 358 S.C. 209, 238, 595 S.E.2d 253, 269 (Ct.App.2004) (citing *Lake v. Reeder Constr. Co.,* 330 S.C. 242, 248, 498 S.E.2d 650, 653 (Ct.App.1998); see *Eaddy v. Eaddy,* 283 S.C. 582, 584, 324 S.E.2d 70, 72 (1984) ("[S]ubject matter jurisdiction ... may be raised at any stage of the proceeding.")). "Lack of subject matter jurisdiction may not be waived and should be taken notice of by this Court." *Amisub of South Carolina, Inc. v. Passmore,* 316 S.C. 112, 114, 447 S.E.2d 207, 208 (1994).

We will address the issues raised by the amicus curiae brief because they involve questions of subject matter jurisdiction and unsettled law in South Carolina.

### B. Ripeness

■ Amicus curiae alleges that Eagle Container's challenge of Newberry County's revocation of a land use permit is not ripe for judicial review because there has been no final determination by the Zoning Board. Amicus curiae assert the court may raise the issue of ripeness *sua sponte* because subject matter jurisdiction considerations encompass ripeness issues. We disagree.

The question of whether subject matter jurisdiction includes ripeness considerations is a novel issue for this state. Several cases have touched on the possible relationship between the two concepts. The Supreme Court of South Carolina found that "[t]he existence of an actual, justiciable controversy is essential to jurisdiction to render a declaratory judgment," and "[a] justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination . . . ." *Orr v. Clyburn,* 277 S.C. 536, 542, 290 S.E.2d 804, 807 (1982) (citing *Notios Corp. v. Hanvey,* 256 S.C. 275, 182 S.E.2d 55 (1971)); *see also Waters v. South Carolina Land*

*Resources Conservation Comm'n,* 321 S.C. 219, 227, 467 S.E.2d 913, 917 (1996). Similarly, this court has held "[a] threshold inquiry for any court is a determination of justiciability, *i.e.,* whether the litigation presents an active case or controversy" and that "[t]he concept of justiciability encompasses the doctrines of ripeness, mootness, and standing." *Holden v. Cribb,* 349 S.C. 132, 136, 561 S.E.2d 634, 637 (Ct.App.2002). However, the Supreme Court of South Carolina has also found that "[t]he doctrine of exhaustion of administrative remedies is generally considered a rule of 'policy, convenience and discretion, rather than one of law, and is not jurisdictional,' " and "[t]he failure to exhaust administrative remedies goes to the prematurity of a case, not subject matter jurisdiction." *Ward v. State,* 343 S.C. 14, 17 n. 5, 538 S.E.2d 245, 246 n. 5 (2000) (citing *Vaught v. Waites,* 300 S.C. 201, 205, 387 S.E.2d 91, 93 (Ct.App.1989)).

Federal Courts and the courts of other jurisdictions have dealt more directly with the interplay of ripeness and subject matter jurisdiction. The Sixth Circuit Court of Appeals held: "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Michigan Dep't of Natural Res.,* 970 F.2d 154, 157 (6th Cir.1992) (quoting, *Southern Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 502 (9th Cir.1990), *cert. denied,* 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991)). Likewise, the Texas Court of Appeals recently held that "[r]ipeness, like standing, is a threshold issue that implicates subject matter jurisdiction, and like standing, emphasizes the need for a concrete injury for a justiciable claim to be presented." *City of Weslaco v. Borne,* 2005 WL 2000842 (Tex.App.2005) (citing *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442 (Tex.1998)).

We find that, in line with South Carolina case law,[1] the concepts of subject matter jurisdiction and ripeness are separate and distinct. "Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." *Dove v. Gold Kist,*

---

**1.** *See Ward,* 343 S.C. at 17 n. 5, 538 S.E.2d at 246 n. 5 (distinguishing "prematurity of a case" from subject matter jurisdiction).

*Inc.*, 314 S.C. 235, 237, 442 S.E.2d 598, 600 (1994) (citations omitted). In comparison, "[t]he basic rationale of the doctrine of ripeness is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by challenging parties." 2 Am.Jur.2d *Administrative Law* Section 485 (citations omitted). The concepts of subject matter jurisdiction and ripeness are often discussed simultaneously as they both involve threshold requirements; however, we find the concepts are distinguishable and should be considered separate and distinct issues.

██ Nevertheless, we find ripeness considerations may be and should be raised *sua sponte.* Both South Carolina and Federal case law support this ruling. In *Baber v. Greenville County,* the rule is articulated that courts generally decline to pronounce a declaration wherein the rights of a party are contingent upon the happening of some event which cannot be forecast and which may never take place. 327 S.C. 31, 44, 488 S.E.2d 314, 321 (1997) (citing *Park v. Safeco Ins. Co.,* 251 S.C. 410, 162 S.E.2d 709 (1968)). The Supreme Court of the United States found "because issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,' we cannot rely upon concessions of the parties and must determine whether the issues are ripe for decision in the 'Case or Controversy' sense" and "to the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint and cannot be bound by the wishes of the parties." *Kremens v. Bartley,* 431 U.S. 119, 136, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977). Likewise, "before addressing merits of any appeal, [the court] must be convinced that the claim in question is ripe for review, even if neither party has raised the issue." *Bigelow v. Michigan Dep't of Natural Res.,* 970 F.2d 154, 157 (6th Cir.1992).

██ In this case, a justiciable claim exists and there is no ripeness issue. The Supreme Court of South Carolina has used a two-factor test for determining ripeness: (1) the fitness of the issues for judicial decision, and (2) the hardship to the

parties of withholding court consideration. *Waters,* 321 S.C. 219, 467 S.E.2d 913. Here, the test is satisfied because a real, live case and controversy exists; Eagle Container will have to satisfy the requirements for "special exception" uses if the County's revocation is valid. Moreover, the issue before the court is a declaratory judgment action for determination of legislative intent. "The determination of legislative intent is a matter of law." *Charleston County Parks Recreation Comm'n v. Somers,* 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995). "Although great deference is accorded the decisions of those charged with interpreting and applying local zoning ordinances, 'a broader and more independent review is permitted when the issue concerns the construction of an ordinance.'" *Id.* (citing *Sea Island Scenic Parkway Coalition v. Beaufort County Bd. of Adjustments Appeals,* 316 S.C. 231, 235, 449 S.E.2d 254, 256 (Ct.App.1994)). Thus, we find that a justiciable claim exists and this case is ripe for review.

## C. Jurisdiction of Circuit Court

Amicus curiae contends the trial court improperly exercised original jurisdiction because Eagle Container did not challenge the constitutionality or validity of either the Enabling Act or Zoning Ordinance. We disagree.

"In general, judicial review is appropriate only when appeal is from a final agency order." *Smith v. South Carolina Ret. Sys.,* 336 S.C. 505, 528, 520 S.E.2d 339, 351 (Ct.App.1999) (citing *Garris v. Governing Bd. of South Carolina Reinsurance Facility,* 319 S.C. 388, 390, 461 S.E.2d 819, 821 (1995) (citing S.C.Code Ann. § 1–23–380(A)). "'A party aggrieved by the application of an ordinance must invoke and exhaust the administrative remedies provided thereby before he may resort to the courts for relief.'" *De Pass v. City of Spartanburg,* 234 S.C. 198, 198, 107 S.E.2d 350, 351 (1959) (citing 62 C.J.S. *Municipal Corporations* § 206, p. 384).

In this case, Eagle Container brought a declaratory judgment action not an appeal of an agency decision. Thus, the trial court did not err in exercising original jurisdiction to determine the effect of the amending ordinance.

### D. Effect of Declaratory Judgment Action

Amicus curiae suggest that the trial court erred in allowing Eagle Container to use a declaratory judgment action to circumvent the ripeness requirements. We disagree.

 "Declaratory judgment actions must involve an actual, justiciable controversy that is ripe for determination." *Waters*, 321 S.C. at 228 n. 7, 467 S.E.2d at 918 n. 7 (citing *S. Bank & Trust Co. v. Harrison Sales Co.*, 285 S.C. 50, 328 S.E.2d 66 (1985)). "Declaratory Judgment Acts are not in general limited by their express terms to cases where there is no other adequate remedy available, but, on the contrary, are expressly made applicable, like ours, without regard to other relief claimed." *Southern Ry. Co. v. Order of Ry. Conductors of Am.*, 210 S.C. 121, 126, 41 S.E.2d 774, 779 (1947). "When there exists a genuine controversy ... requiring a judicial determination, the court is not bound to refuse to exercise its power to declare rights and other legal relations merely because there is another remedy available." *Id.* (citing 16 Am.Jur. § 13, Page 286; *Woollard v. Schaffer Stores Co.*, 272 N.Y. 304, 5 N.E.2d 829 (1936)).

The claim set forth by Eagle Container involved a justiciable controversy. While Eagle Container had an alternate possibility of relief available (appeal to Board of Zoning), this alternate course required additional measures (satisfying requirement for "special uses"). Thus, the trial court did not err in finding the case ripe for review.

### *CONCLUSION*

We conclude that, under the "plain meaning rule," Ordinance No. 12–49–02 clearly and unambiguously amends the Newberry County Zoning Ordinance to change "landfills" to a permitted use in R–2 Rural Districts. In the alternative, if the ordinance is ambiguous, we find the rules of statutory construction, namely the last legislative expression rule, require giving effect to section 301, as amended, over section 501. Accordingly, the decision of the trial court is

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.