**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-1303**

---

CHARLES S. MOORE,

Plaintiff - Appellant,

versus

GREENWOOD SCHOOL DISTRICT NO. 52; BUTCH COBB;
ANDY OWINGS; MICHAEL DOOLITTLE; JOANNE
CAMPBELL, in their individual and official
capacities,

Defendants - Appellees.

---

Appeal from the United States District Court for the District of
South Carolina, at Anderson.  G. Ross Anderson, Jr., District
Judge.  (CA-01336-8)

---

Submitted:  June 21, 2006          Decided:  August 18, 2006

---

Before WILLIAMS, MICHAEL, and SHEDD, Circuit Judges.

---

Affirmed in part; vacated and remanded in part by unpublished per
curiam opinion.

---

Charles S. Moore, Appellant Pro Se.  Andrea Eaton White, DUFF,
DUBBERLY, TURNER, WHITE & BOYKIN, L.L.C., Columbia, South Carolina;
Andrew Elliott Haselden, William George Besley, HOWSER, NEWMAN &
BESLEY, L.L.C., Columbia, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Charles S. Moore appeals the district court's order dismissing his complaint and denying his motion to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. We affirm in part and vacate and remand in part.

Moore, who was employed by the Greenwood School District ("Greenwood") from 1992 through 2002 as a basketball coach and math teacher at Ninety Six High School, alleges he was relieved of his coaching duties in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681-1688 (2000) ("Title IX").[1] Moore sued Greenwood and Michael Doolittle, the athletic director at Ninety Six High School; Andy Owings, a member of the school board; Joanne Campbell, principal of Ninety Six High School; and Butch Cobb, chairman of the school board. The individual Defendants were sued in their official and individual capacities.

According to Moore, in May 2000, parents complained to the Office of Civil Rights ("OCR") of the United States Department of Education that Greenwood discriminated against female athletes in the interscholastic athletic program in the areas of locker

---

[1]Title IX provides in pertinent part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681 (2000).

rooms, practice, competitive facilities, equipment, supplies, coaching, and scheduling of games and practice times. Moore stated his belief that the women's athletic program was intentionally discriminated against and that Greenwood was aware of his beliefs and his support for the women's softball and basketball coach. The OCR interviewed Moore and ultimately concluded that Greenwood did not provide "equivalent benefits, opportunities, and treatment to female students at Ninety Six High School." Moore alleges his coaching contract was not renewed based on these comments and his participation in the OCR investigation.

Moore then filed his own complaint with the OCR. After an investigation, the OCR found Moore participated in protected activity; the Defendants had knowledge of his protected activity; the Defendants took adverse action against Moore when his coaching contract was terminated; there was a connection between Moore's protected activity and the adverse action; and the Defendants lacked a legitimate non-discriminatory reason for their actions. Thus, the OCR determined Greenwood retaliated against Moore in violation of Title IX.

Almost two years later, Moore filed his lawsuit, alleging the following causes of action: a Title IX retaliation claim against Greenwood; a First Amendment free speech claim against Greenwood and the individual Defendants, in their official and individual capacities, pursuant to 42 U.S.C. § 1983 (2000); a Fifth

and Fourteenth Amendment procedural due process claim against Greenwood, Cobb, and Owings, pursuant to § 1983; a Fifth and Fourteenth Amendment substantive due process claim against Greenwood, Cobb and Owings, pursuant to § 1983; and various state law claims. The district court, after reviewing Defendants' objections to the magistrate judge's report and recommendation, dismissed Moore's complaint in its entirety and denied reconsideration of that order. Moore timely appealed.

On appeal, Moore attacks only: (1) the district court's dismissal of his Title IX retaliation claim as untimely filed; or alternatively, because Title IX affords no private right of action for a claim of retaliation; and (2) the district court's dismissal of his First Amendment retaliation claim against the individual defendants based on qualified immunity, or alternatively, because Moore did not allege sufficient facts to state a claim for supervisory liability under § 1983. Our review is therefore limited to these issues. See 4th Cir. R. 34(b) ("The Court will limit its review to the issues raised in the informal brief."). We affirm the district court's order as to all other claims because Moore has not raised those issues on appeal.

Moore asserts that Title IX provides a private right of action for retaliation. The parties agree that under Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005), in which a school district employee who claimed the school district retaliated

against him for reporting Title IX violations was entitled to file a private cause of action against the district, Moore could have a private right of action for retaliation under Title IX. Jackson, however, did not address the statute of limitations that should be applied to such claims.

Moore argues that the applicable statute of limitations in Title IX cases should be the general state statute of limitations for personal injury actions, which is two years in South Carolina. Although this Court has not yet ruled on the issue, we have held that claims brought under Section 504 of the Rehabilitation Act are governed by the limitations periods set forth in state laws prohibiting discrimination on the basis of disability. See Wolsky v. Med. Coll. of Hampton Roads, 1 F.3d 222, 225 (4th Cir. 1993) (holding that the Virginia Rights of Persons with Disabilities Act was the state statute most analogous to Section 504, and continuing to apply the one-year limitations period in that Act to dismiss a complaint). Similarly, in South Carolina, it is an unlawful employment practice for an employer "to fail or refuse to hire, bar, or discharge from employment or otherwise discriminate against an individual with respect to the individual's compensation or terms, conditions, or privileges of employment because of the individual's . . . sex, age, national origin, or disability." S.C. Code. Ann. § 1-13- 80(A)(1) (2005) (the "State Human Affairs Law" or "SCHAL"). Thus, the same

standard for evaluating claims under the State Human Affairs Law is used for evaluating claims under federal anti-discrimination laws. See Taylor v. Cummins Atlantic, Inc., 852 F. Supp. 1279, 1283 n.2 (D.S.C. 1994) (citing Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C. 1982) (holding that Title VII cases "are certainly persuasive if not controlling in construing the [SCHAL]"). We conclude that the State Human Affairs Law is the more analogous law in this case, and the district court correctly applied SCHAL's one-year statute of limitations instead of the two-year limitations period applicable to personal injury actions. We therefore affirm the district court's order on that issue.

Moore does not challenge the district court's dismissal of his First Amendment retaliation claim against Greenwood or the individual Defendants in their official capacities on the basis of Eleventh Amendment immunity. Rather, Moore asks this Court to rule that the individual Defendants in their individual capacities are not entitled to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Moore alleges that he made statements concerning discrimination and funding issues that were of public concern, and that the Defendants retaliated against him based on those statements.

A district court's determination that the individual Defendants are entitled to qualified immunity is reviewed de novo, viewing the evidence in the light most favorable to Moore. See

Gomez v. Atkins, 296 F.3d 253, 260-61 (4th Cir. 2002). In ruling on a defense of qualified immunity, a court must (1) identify the specific right allegedly violated; (2) determine whether at the time of the alleged violation the right was clearly established; and (3) if so, determine whether a reasonable person in the official's position would have known that his action would violate the right. Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992); see, e.g., Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (holding that an assistant principal had a First Amendment right to protest racially discriminatory practices at her school without fear of retaliation).

Further, we reject any reliance upon the heightened pleading standard articulated in Dunbar Corp. v. Lindsey, 905 F.2d 754, 763-64 (4th Cir. 1990), to conclude that Moore's free speech claim failed to state a cause of action under § 1983. Subsequent to Dunbar, the Supreme Court unanimously rejected imposition of a heightened pleading standard. See Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). While the context of the decision was consideration of the propriety of a heightened pleading in an employment discrimination case, the Court pronounced that, with limited exceptions not here relevant, the "simplified pleading standard [of Federal Rule of Civil Procedure 8(a)] applies to all civil actions." Id. at 513. Applying Swierkiewicz here, we find Moore pled sufficient facts to survive a motion to dismiss.

Moore finally contends that the individual Defendants Cobb, Owings and Campbell should be held liable for Doolittle's actions (with respect to his First Amendment retaliation claim) on the basis of supervisory liability. According to Moore, the three "supervisory" individual Defendants (1) were aware of his role as a witness in the Title IX investigation; (2) were aware of his statements to the OCR; and (3) were aware of Doolittle's retaliatory refusal to renew Moore's coaching contract for speaking on such issues. Moreover, Moore claims that the school board and the supervisory individual Defendants acted personally to uphold and ratify the alleged wrongful termination.

Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. See Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). We have articulated a three-part test to establish supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the

- 8 -

particular constitutional injury suffered by the plaintiff." <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

In <u>Randall v. Prince George's County</u>, 302 F.3d 188, 206 (4th Cir. 2002), this Court concluded that, "[u]nder the first prong of <u>Shaw</u>, the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.'" Furthermore, in establishing "deliberate indifference" under <u>Shaw</u>'s second prong, a plaintiff "[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." <u>Id.</u> (quoting <u>Slakan</u>, 737 F.2d at 373). The crux of Defendants' argument is that the single alleged act of individual Defendant Doolittle was insufficient, as a matter of law, to meet the "widespread or pervasive" test or to demonstrate supervisory deliberate indifference thereto.

We agree with the Defendants. The single incident of upholding and ratifying Defendant Doolittle's decision not to renew Moore's coaching contract is insufficient as a matter of law to establish supervisory liability. Moore has not alleged that it was customary for Defendant Doolittle to restrict the First Amendment rights of the coaches or teachers, nor has Moore alleged even a

single prior instance by Defendant Doolittle or any other official at the high school analogous to his present claim.

Accordingly, we affirm the district court's dismissal of Moore's Title IX claim against Greenwood as untimely and the district court's dismissal of Moore's supervisory liability claim against Campbell, Cobb, and Owings. We vacate the district court's order and remand for further consideration of Moore's First Amendment claim against the individual Defendants.[2] We affirm the district court's orders in all other respects. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART

---

[2]By this disposition, we indicate no view as to the ultimate disposition of Moore's First Amendment claim. We accordingly leave the course of proceedings on remand to the sound discretion of the district court.